George **SOUSA** and Jacqueline Sousa, Plaintiffs,

v.

**OCEAN SUNFLOWER SHIPPING CO., LTD.,** Neptune Leo Shipping Corporation, and Kurushima Dockyard Co., Ltd., Defendants.

**No. C–83–5329 WHO.**

United States District Court, N.D. California.

Sept. 24, 1984.

Eugene A. Brodsky, Jarvis, Miller, Brodsky, & Baskin, Inc., San Francisco, Cal., for plaintiffs.

John Hays, George L. Waddell, James R. Walsh, Dorr, Cooper & Hays, San Francisco, Cal., for Kurushima.

John A. Flynn, Graham & James, San Francisco, Cal., for Ocean Sunflower & Neptune Leo Shipping.

**1310**

## OPINION AND ORDER

ORRICK, District Judge.

The question presented by the instant motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) is whether this Court may constitutionally exercise personal jurisdiction over defendant Kurushima Dockyard Co., Ltd. ("Kurushima"), a Japanese shipbuilder, whose only contact with this forum is that it designed a ship to be used by another company in trade between Japan and the United States west coast.

For the following reasons, the Court determines that Kurushima has not purposefully availed itself of the privilege of conducting activities in this forum. Because the moving defendant lacks minimum contacts with the forum the Court's assumption of jurisdiction would violate due process, and hence the motion to dismiss is granted.

### I

Plaintiff George Sousa is a longshoreman allegedly injured when he was struck by a water-tight door while ascending a ladder aboard the M.S. *Tokyo Rainbow* ("the vessel"). At the time of the accident the vessel was afloat in the navigable waters of Humboldt Bay, California. In March, 1983, Sousa and his wife filed a negligence and products liability action against Kurushima, the vessel's Japanese designer and builder; its Japanese owners, Ocean Sunflower Shipping Co., Ltd.; and its charterer, Neptune Leo Shipping Corporation. Plaintiffs allege that the water-tight door was negligently designed and located near the ladder. Plaintiffs and Kurushima's co-defendants (hereinafter referred to as "co-defendants") oppose Kurushima's motion to dismiss.

Kurushima brings this motion asserting that the Court lacks personal jurisdiction over it. In support of the motion, Kurushima submitted the affidavit of Izumi Yanai, an officer of Kurushima and Manager of its Design Department, explaining that it is engaged solely in the shipbuilding business, and builds ships at two dockyards it owns in Japan. Kurushima, which has no officers, agents, employees, or representatives in the United States or California, has never built or converted any vessels or sold any vessels to anyone in this country, nor has it ever solicited or received any orders from the United States or California. Kurushima has no business communications with anyone in the forum, and its officers or employees have never visited this country on any business related to the vessel *Tokyo Rainbow*. Finally, Kurushima has never performed services, conducted operations, or possessed property in the country, or in any way looked to the laws of California or the United States for any privilege or protection.[1] Affidavit of Izumi Yanai filed February 28, 1984.

Co-defendants, however, submitted the affidavit of the Executive Director of Tokai Shipping, the vessel's original owner. The affidavit states that in 1974–1975 Tokai contracted with Kurushima for the building of a ship with certain major design changes from Kurushima's "standard type of log carrier vessel." These changes were made to enable the ship to carry Japanese steel to the United States west coast, including California. Among other things, Kurushima strengthened the vessel's tank top, changed the vessel's hatch covers, and changed the cargo gear. Tokai sold the vessel to Ocean Sunflower in 1982. Because of these design changes, co-defendants submit that Kurushima knew or should have known that the vessel would be calling at United States west coast ports, including those of California. Affidavit of Tamotsu Horibata, attached to defendant Ocean Sunflower's memorandum of points and authorities in opposition to motion to dismiss, filed May 16, 1984.

The Court must decide if these facts, standing alone, are sufficient to invoke lim-

---

1. Kurushima's affidavit also discloses that since 1949 its employees have visited southern California twice: once in 1978 to investigate port conditions and once in 1983 to examine a cracked hull. Neither of these contacts relates to the present controversy.

ited personal jurisdiction over Kurushima for purposes of this action.

## II

To determine whether this Court has personal jurisdiction over Kurushima, it must first decide whether California's long-arm statute potentially confers personal jurisdiction over the nonresident defendant, and second, whether the application of the statute is consistent with federal due process. *See, e.g., Congoleum Corp. v. DLW Aktiengesellschaft,* 729 F.2d 1240, 1241 (9th Cir.1984). In this case, § 410.10 of the California Code of Civil Procedure permits California courts to "exercise jurisdiction on any basis not inconsistent with the Constitution of this State or of the United States." Thus, the state and federal limits are coextensive. *Congoleum, supra,* 729 F.2d at 1241. The Court, therefore, must now determine whether application of the statute is consistent with due process.

 Due process requires that a defendant have certain minimum contacts with the forum such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1287 (9th Cir.1977), this circuit adopted the following criteria for evaluating the nature and quality of a defendant's minimum contacts: (1) the nonresident defendant must perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one that arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *Id.* at 1287; *see Cubbage v. Merchent,* 732 F.2d 1476, 1478 (9th Cir.1984); *Raffaele v. Compagnie Generale Maritime,* 707 F.2d 395, 397 (9th Cir.1983). The party seeking to invoke jurisdiction has the burden of establishing that jurisdiction exists. *Data-Disc, supra,* 557 F.2d at 1285.

The *Data-Disc* "purposeful availment" requirement ensures that a *"defendant's* conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Hunt v. Erie Insurance Group,* 728 F.2d 1244, 1247 (9th Cir.1984) (emphasis in original), *quoting World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *see Rush v. Savchuk,* 444 U.S. 320, 332, 100 S.Ct. 571, 579, 62 L.Ed.2d 516 (1980) (defendant must have judicially cognizable ties with forum). The focus of the minimum contacts analysis must be on the relationship among the defendant, the forum, and the litigation. *Cubbage, supra,* 732 F.2d at 1478.

The issue here is whether Kurushima purposefully availed itself of the privilege of conducting activities in California by redesigning its standard log-carrying vessel to carry steel that it knew would be destined for United States ports. To invoke jurisdiction, plaintiff and co-defendants contend that Kurushima placed the vessel in the "stream of commerce" with the knowledge that it would call on United States west coast ports, including California. Kurushima argues that foreseeability alone is insufficient to invoke the Court's jurisdiction. It maintains that it derives no benefits or protections from California, either by soliciting business or distributing its products there.

### A

In Kurushima's view, the facts here cannot be distinguished from those in *World-Wide Volkswagen.* In that case, an automobile distributor sold cars and parts to dealers in three northeastern states. An auto purchaser sought to invoke an Oklahoma court's personal jurisdiction over the distributor on a products liability claim arising from an Oklahoma accident.

The Supreme Court, extensively discussing the "purposeful availment" due process requirement, discarded the notion that the "defective" automobile's mobility had any bearing on the outcome of the personal

jurisdiction question. *World-Wide Volkswagen, supra,* 444 U.S. at 296–97 n. 11, 100 S.Ct. at 567 n. 11. The Court also rejected the assertion that foreseeability of the auto's use in Oklahoma controlled. " 'Foreseeability' *alone* has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *Id.* at 295, 100 S.Ct. at 566 (emphasis added). The Court did instruct that foreseeability is not wholly irrelevant, however.

> "[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."

*Id.* at 297, 100 S.Ct. at 567; *see Cubbage,* 732 F.2d at 1478 (if a defendant "purposefully availed" itself of the forum's privileges it should foresee being haled into court there).

The Supreme Court found that the distributor did not directly or indirectly serve the Oklahoma market. It sold no cars to Oklahoma residents and solicited no business there. The Court contrasted a situation where a manufacturer or distributor seeks to serve a market for its products in other States. For example, a forum State would not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id.,* 444 U.S. at 298, 100 S.Ct. at 567.

In *Hedrick v. Daiko Shoji Co., Ltd., Osaka,* 715 F.2d 1355 (9th Cir.1983), the Ninth Circuit applied the teachings of *World-Wide Volkswagen* to facts similar to those at bar. *Hedrick* involved an Oregon longshoreman injured by a defective wire splice while working aboard a Japanese-owned ship. The splice was manufactured by a Japanese corporation, Daiko, and was sold for use on ocean-going vessels serving world ports. On motion by the defendant, the district court dismissed plaintiff's products liability claim against Daiko because the arrival of the splice in Oregon was "completely fortuitous." *Hedrick,* 715 F.2d at 1356.

The Ninth Circuit based its reversal on the stream of commerce theory. *Id.* at 1358. The court noted that Daiko manufactured for a world-wide market, annually producing over 300,000 splices. It held that "Daiko performed a forum-related act when it produced a splice that it knew was destined for ocean-vessels serving United States ports, including those of Oregon." *Id.*[2]

Because the Supreme Court has rejected foreseeability as a due process criterion, the Court must closely examine the *Hedrick* court's interpretation of *World-Wide Volkswagen* and the stream of commerce theory. Significantly, the *Hedrick* court misstated a crucial teaching of *World-Wide Volkswagen.* The circuit stated that a court may assert personal jurisdiction where a "defendant delivers its products into the stream of commerce with the expectation that they *will reach* the forum state." *Hedrick, supra,* 715 F.2d at 1358 (emphasis added). The Supreme Court actually held that a court does not exceed its power by asserting jurisdiction over a "corporation that delivers its products into the stream of commerce with the expectation that they *will be purchased by consumers* in the forum state." *World-Wide Volkswagen, supra,* 444 U.S. at 298, 100 S.Ct. at 567 (emphasis added). A discussion of the stream of commerce theory illustrates the significance of the slight change in language.

---

**2.** Plaintiff also relies on *Raffaele v. Compagnie Generale Maritime, S.A.,* 707 F.2d 395 (9th Cir. 1983). *Raffaele* is inapposite because it involved a negligence claim to which the stream of commerce theory is inapplicable. The court found that defendant had purposefully availed itself of the benefits of conducting business in the forum, because (1) it had packed the containers that injured plaintiff, (2) the crates were marked as destined for the forum, and (3) defendant had by contract agreed to submit to the jurisdiction of any court in which the carrier of the crates might bring a recourse action. *Id.* at 397.

## B

■ The stream of commerce theory posits that by distributing a product nationally, a manufacturer has submitted voluntarily to the jurisdiction and laws of any state to which the product travels. *See* Note, *The Long Arm Reach of the Courts under the Effect Test After Kulko v. Superior Court,* 65 Va.L.Rev. 175, 179 (1979). Courts developed this theory to prevent manufacturers from insulating themselves from product liability suits merely by using distribution "middlemen" or by professing ignorance of the product's ultimate destination. *See DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 285 (3d Cir.), *cert. denied,* 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981); *American President Lines, Ltd. v. Metropolitan Stevedore Services,* 567 F.Supp. 169, 171 (W.D.Wash. 1983). Personal jurisdiction is reasonable because by increasing the distribution of its products through indirect sales within the forum, a manufacturer benefits legally from the protection provided by the laws of the forum state, as well as economically from indirect sales to forum residents. *DeJames, supra,* 654 F.2d at 285.

The Ninth Circuit employed this theory in *Duple Motor Bodies, Ltd. v. Hollingsworth,* 417 F.2d 231 (9th Cir.1969). There, the court held that a British defendant purposefully availed itself of Hawaii's protections and privileges when it designed coach bodies to be sold to Hawaiians for use in Hawaii. The court did not consider it a burden on foreign trade "to require a manufacturer to defend his product wherever he himself has placed it, either directly or through the normal distributive channels of trade." *Id.* at 235.

Thus, there is a decidedly "economic" rationale underlying the stream of commerce theory. Positioned at the start of the distribution system, a manufacturer purposefully conducts its activities to make its products available for purchase in as many forums as possible, thereby directly and indirectly serving a wide market. *See Nelson v. Park Industries, Inc.,* 717 F.2d 1120, 1125 (7th Cir.1983). Because a manufacturer intends to serve a broad market, and because it derives direct economic benefit from serving that market, a manufacturer may be subject to a particular forum's jurisdiction. *Id.* at 1126; *see Insurance Co. of North America v. Marina Salina Cruz,* 649 F.2d 1266, 1274 (9th Cir. 1981) (Schroeder, J., specially concurring); *Cannon v. Tokyu Car Corp.,* 580 F.Supp. 1451, 1454 (S.D.Miss.1984).

## C

Using the stream of commerce theory, the *Hedrick* decision broadens personal jurisdiction to all forums where a manufacturer knows that its product arrives and is used, regardless of whether the manufacturer has sought to place the product there through a direct or an indirect marketing scheme. This position, rejected by the majority in *World-Wide Volkswagen,* was advocated by Justice Brennan in dissent:

> "It is difficult to see why the Constitution should distinguish between a case involving goods which reach a distant State through a chain of distribution and a case involving goods which reach the same State because a consumer, *using them as the dealer knew the customer would,* took them there. In each case the seller purposefully injects the goods into the stream of commerce and those goods predictably are used in the forum State."

*World-Wide Volkswagen, supra,* 444 U.S. at 306–07, 100 S.Ct. at 584 (Brennan, J., dissenting) (emphasis added, footnote omitted).

Rejecting Justice Brennan's position, the majority of the Court emphasized that it is the *defendant's* conduct that must be analyzed. "[T]he mere 'unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.'" *Id.* at 298, 100 S.Ct. at 567, *quoting Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). The Court recently reaffirmed *World-Wide Volkswagen,* holding that "unilateral activity of another party or third person is not

an appropriate consideration when determining whether a defendant has sufficient contacts with a forum" to justify personal jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* — U.S. —, —, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984). A forum's jurisdiction is reasonable where a manufacturer seeks to serve "the market for its products" in the forum, *World-Wide Volkswagen, supra,* 444 U.S. at 297, 100 S.Ct. at 567, but not where a third party merely uses defendant's product there. The reasoning in *Hedrick* is thus inconsistent with that of the Supreme Court.

The Third Circuit refused to apply the stream of commerce theory to facts indistinguishable from those at bar. In *De-James, supra,* a longshoreman brought a negligence and strict liability action for injuries suffered on a ship anchored off New Jersey. The Japanese defendant, Hitachi, had converted the vessel in Japan from a bulk carrier to an automobile carrier for the vessel's owner. Plaintiff argued that because Hitachi "manufactured" a ship capable of carrying automobiles, it should be amenable to process in any port where the ship docks and injury results.

After reviewing the theory's underlying rationale, the *DeJames* court observed that Hitachi did not directly or indirectly "market" the vessel in New Jersey. *DeJames, supra,* 654 F.2d at 285. The court also found that Hitachi received no economic benefit from the forum:

"Hitachi receives no economic benefit, either direct or indirect, from residents of New Jersey. Although it could be argued that Hitachi receives some derivative benefit from the international market for Japanese cars and from the fact that the charterers of the vessel were permitted to unload cars in New Jersey, we believe that this attenuated benefit is insufficient to support the assertion of personal jurisdiction."

*Id.* at 285. *Accord Growden v. Ed Bowlin & Associates, Inc.,* 733 F.2d 1149 (5th Cir. 1984).[3]

### D

■ These considerations apply with equal force to the case at bar. Kurushima sold the vessel in Japan to a Japanese customer who sold the vessel in 1982. Kurushima did not use the shipowner as a "distributor" to deliver its "product" into California for purchase there. *Cf. Duple Motor Bodies, supra,* 417 F.2d at 234–35. Kurushima does not derive any economic benefit from California. It may indirectly benefit from the international market for Japanese steel and United States lumber because this trade increases the demand for vessels capable of transporting these products. Such derivative economic benefits from the forum, however, will not support personal jurisdiction under a stream of commerce theory.[4] *See DeJames, supra,*

---

3. In *Growden v. Ed Bowlin & Associates, Inc.,* 733 F.2d 1149 (5th Cir.1984), the court found no personal jurisdiction although defendant had more contacts with the forum than Kurushima has with this forum. The plaintiff in *Growden* brought a wrongful death diversity action against a Georgia corporation engaged in the resale of used aircraft. Plaintiff filed his suit in Louisiana, claiming the following jurisdictional contacts: (1) defendant advertised its business in two national publications; (2) delivery of the aircraft occurred in Louisiana, (3) defendant promised to pay for repairs to the alternator light on the plane; (4) defendant knew the plane would be based in Louisiana; and (5) the plane was paid for with checks drawn on a Louisiana bank. On the significance of defendant's knowledge that the plane would be based in Louisiana (the single factor on which plaintiff Sousa would base personal jurisdiction in this case), the Fifth Circuit held that such

knowledge was "insufficient to support the exercise of jurisdiction." *Id.* at 1152. The court noted that defendant had sent no written representations to the plaintiffs and that the mobility of the airplane "would preclude any certain knowledge that the plane would be used only in Louisiana." *Id.*

4. Because the Court decides this case on the first *Data-Disc* criteria, it is not necessary to determine whether the plaintiff's injury arose from a forum-related act, or whether assumption of jurisdiction would be reasonable. However, even assuming that the redesign of the vessel was a "purposeful interjection" into this forum, plaintiff has made no showing that his injury arose from a part of the vessel that was redesigned to enable it to engage in a particular type of trade with California and the west coast. The water-tight door plaintiff complains of was

654 F.2d at 285–86; *World-Wide Volks-wagen, supra,* 444 U.S. at 299, 100 S.Ct. at 568.

■ Kurushima's shipbuilding activities are conducted exclusively in Japan, apparently without the slightest inclination to develop a customer base in the United States. The record reveals only one contact with the forum—the arrival of the *Tokyo Rainbow* and the occurrence of an alleged injury. By modifying the vessel to enable it to carry steel to the United States and other world ports, Kurushima did not seek to serve the California market or to distribute its goods in California. *See Insurance Co. of North America, supra,* 649 F.2d at 1274 (Schroeder, J., specially concurring); *cf. Raffaele, supra,* (defendant purposefully injected its services into forum by negligently loading containers). Similarly, to the extent that the ship's arrival in California was foreseeable, foreseeability is insufficient to invoke personal jurisdiction.

Kurushima has not sought to serve the California market by redesigning its standard vessel to carry steel. Plaintiff has pointed to no benefit or protection that Kurushima enjoys from the laws of this forum. The Court, therefore, finds that Kurushima has no constitutionally cognizable contacts with this forum.

Accordingly,

IT IS HEREBY ORDERED that defendant Kurushima's motion for dismissal for lack of *in personam* jurisdiction is granted. On or before October 10, 1984, defendant Kurushima shall lodge with the Court a form of judgment approved as to form by the plaintiffs.

not included in the description of modifications to the vessel set forth in co-defendants' affidavit