CHARLES GENDLER & CO., INC., PLAINTIFF-APPELLANT, v.
NIPPON ELECTRIC CO., LTD., DEFENDANT-RESPONDENT,
AND TELECOM EQUIPMENT CORPORATION, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued January 21, 1985—Decided March 5, 1985.

228

Before Judges KING, DEIGHAN and BILDER.

*Stephen W. Gruhin* argued the cause for plaintiff-appellant (*Gruhin & Gruhin*, attorneys).

*Paul J. Linker* argued the cause for defendant-respondent Nippon Electric Co., Ltd. (*Robinson, Wayne, Levin, Riccio & LaSala*, attorneys; *Paul J. Linker* and *Joseph F. Lagrotteria*, on the brief).

The opinion of the court was delivered by

DEIGHAN, J.A.D.

Plaintiff appeals from an order dismissing its complaint and quashing service of process against Nippon Electric Co., Ltd., a Japanese corporation, (Nippon) on the ground that New Jersey lacks *in personam* jurisdiction. Nippon is a Japanese manufacturer of telephone equipment and markets its products through two wholly-owned subsidiaries which conduct business in the United States. Nippon owns all of the stock of NEC America, Inc. (NEC America), which in turn owns all of the stock of NEC Telephones, Inc. (NEC Telephones). Both subsidiaries are New York corporations which obviously serve the Northeastern United States market. NEC America is the importer or distributor and sold the telephone system to NEC Telephone who sold the system to defendant Telecom Equipment Corporation (Telecom). Telecom in turn sold and installed the telephone system in plaintiff's business establishment in Belleville, New Jersey. Plaintiff served the summons and complaint on Nippon by certified mail addressed to Nippon's subsidiary, NEC Telephones, in Melville, New York. Nippon moved to dismiss the complaint for lack of *in personam* jurisdiction based on a certification by Hiroshi Shigehara, general manager of Nippon's First North American Division.

The system was manufactured by Nippon. According to the certification, Nippon is a Japanese corporation with its headquarters and principal place of business in Tokyo, Japan. Nippon manufactures telephone equipment "for sale to companies throughout the world." Nippon has never been authorized to

do business in New Jersey. It has no offices, agents, representatives, distributors or subsidiaries in New Jersey. It does not directly receive an income in New Jersey and it does not solicit business here "through sales representative, advertisements or mailings." Nippon never had any contact with plaintiff. Nippon does business in this country solely through the two wholly-owned subsidiaries. Both subsidiaries "maintain their own books and records, file their own tax returns in the United States and manage their financial affairs and day-to-day operations." The subsidiaries are the merchandising tools, if not the tentacles of their commercial parent.

The trial court held that Nippon lacked sufficient contacts with New Jersey to permit our courts to assert *in personam* jurisdiction over it. Plaintiff submitted no proof to establish that NEC America or NEC Telephone were anything other than separate and independent wholly-owned subsidiaries. The only facts established were that Nippon manufactured telephone systems for world-wide distribution and distribution in the United States through two wholly-owned subsidiaries which facts, in the trial court's view, were insufficient upon which to base jurisdiction.

In April of 1979 plaintiff purchased the telephone system manufactured by Nippon from Telecom. Telecom finished installing the system in late June 1979 and was paid at that time. Plaintiff contends that the telephone system was defective from the time it was installed. It alleges that some of the telephone components and ancillary equipment became totally inoperable. In light of the improper performance of the system, Telecom extended the one-year post installation warranty. Despite this, plaintiff avers that many attempts by Telecom to rectify the defects in the system have been unsuccessful. Count two of the complaint seeks damages from Nippon on the ground that the equipment "was from the time of its manufacture and remains to the present wholly defective, unmerchantable and

unfit for the ordinary purposes and uses for which it was intended." [1]

We are confronted with two questions: (1) whether the courts of New Jersey have *in personam* jurisdiction over Nippon under the given facts because it introduced the equipment into the stream of commerce, and (2) whether the summons and complaint served on Nippon's subsidiary should be upheld, notwithstanding plaintiff's noncompliance with *R*.4:4–4(c)(1). We hold that the Courts of New Jersey have jurisdiction but that the service of process is invalid.

Plaintiff contends that New Jersey has jurisdiction over Nippon because it manufactured the telephone equipment and placed it into the stream of commerce. It argues that the "stream of commerce" theory finds strong support in dictum in *World-Wide Volkswagen Corp. v. Woodson*, 444 *U.S.* 286, 100 *S.Ct.* 559, 62 *L.Ed.*2d 490 (1980), and has been applied in subsequent cases. Nippon argues that its contacts with New Jersey were insufficient and that it never purposely availed itself of the privileges and protection of New Jersey law. Rather, it operates through independent wholly-owned subsidiaries which are amenable to service of process. It stresses that it was not involved in the sale between plaintiff and Telecom and that it had no contact whatsoever with New Jersey.

Pursuant to *R*.4:4–4(c)(1) if personal service cannot be made upon a foreign corporation then, "[c]onsistent with due process of law, service may be made by mailing, by registered or certified mail, return receipt requested, a copy of the summons and complaint to a registered agent for service, or its principal place of business, or its registered office." Under this rule foreign corporations are subject to suit in New Jersey as

---

[1]The "defective product" language of the complaint could be deemed as asserting a strict liability theory for loss of bargain damages in a commercial context, a cause of action recently recognized in New Jersey. *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 191 *N.J.Super.* 22 (App.Div.1983), certif. granted 95 *N.J.* 208 (1983).

long as due process is satisfied. New Jersey courts are vested with jurisdiction over foreign corporations to the outer limits permitted by due process. *Avdel Corporation v. Mecure*, 58 *N.J.* 264, 268 (1971); *Kislak v. Trumbull Shopping Park*, 150 *N.J.Super.* 96 (App.Div.1977).

Under the Fourteenth Amendment of the United States Constitution, the extent to which federal due process limits state jurisdiction over nonresidents and foreign corporations is a question of federal law governed primarily by decisions of the United States Supreme Court. Annotation, "Construction and Application of State Statutes or Rules of Court Predicating In Personam Jurisdiction Over Nonresidents or Foreign Corporations on Making or Performing a Contract within the State," 23 *A.L.R.*3d 551, 562 (1969). In the landmark case of *Pennoyer v. Neff*, 95 *U.S.* (5 *Otto*) 714, 24 *L.Ed.* 565 (1878), the United States Supreme Court established that the due process clause of the Fourteenth Amendment is violated where a court renders a personal judgment against a nonresident individual defendant without having jurisdiction over that defendant. As a matter of due process, a State cannot acquire personal jurisdiction merely by serving process upon the defendant outside the forum or by publication.

State jurisdiction over nonresidents was substantially advanced in 1945 in the leading case of *International Shoe Co. v. Washington*, 326 *U.S.* 310, 66 *S.Ct.* 154, 90 *L.Ed.* 95 (1945), which held that a foreign corporation which systematically and continuously employed a force of salesmen, residents in the State of the forum, to canvas orders in the State may, consistent with due process, be sued in the State to recover contributions to the State Unemployment Compensation Fund respecting the salesmen. *Id.* at 320, 66 *S.Ct.* at 160. A new test was laid down to the effect that a state court may acquire personal jurisdiction over a nonresident as long as there exist "minimum contacts" between the defendant and the forum state. *Id.* at 316, 66 *S.Ct.* at 158. The protection against inconvenient

litigation is described in terms of "reasonableness" or "fairness." Defendant's contacts with the forum State must be such that maintenance of the suit "does not offend 'traditional notions of fair play and substantial justice.'" *Ibid.* quoting *Milliken v. Meyer,* 311 *U.S.* 457, 463, 61 *S.Ct.* 339, 342, 85 *L.Ed.* 278 (1940). The relationship between the defendant and the forum must be such that it is "reasonable ... to require the corporation to defend the particular suit which is brought there." *International Shoe* at 317, 66 *S.Ct.* at 158.

After *International Shoe* there developed a trend toward expanding the permissible scope of state jurisdiction over foreign corporations, in part attributable to the increasing volume of multi-state transactions and developments in communication and transportation which made it easier for a foreign corporation to defend itself in the forum State. *See Magee v. International Life Ins. Co.,* 355 *U.S.* 220, 223, 78 *S.Ct.* 199, 201, 2 *L.Ed.*2d 223 (1957). However, the Court later cautioned that "... it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of State court." *Hanson v. Denckla,* 357 *U.S.* 235, 251, 78 *S.Ct.* 1228, 1238, 2 *L.Ed.*2d 1283 (1958).

As indicated in *World-Wide Volkswagen Corp., supra,* the question is whether the product finds its way into the State by virtue of an isolated sale, or whether the foreign defendant makes efforts to directly serve a market in the forum State, thereby purposefully availing itself of the privilege of conducting business within that State. 444 *U.S.* at 297, 100 *S.Ct.* at 567. In *World-Wide Volkswagen Corp.,* plaintiffs, New York residents, purchased an automobile from a New York dealer, who in turn had acquired the car from a regional distributor servicing New York, New Jersey and Connecticut. In the process of moving to Arizona, plaintiffs passed through Oklahoma where they were involved in an accident. They brought a products liability suit in Oklahoma, alleging that the car's gas tank and fuel system were defectively designed. The New

York retail dealer and Northeastern regional distributor claimed that they lacked sufficient contacts with Oklahoma to confer *in personam* jurisdiction over them in that state.

The crucial factor, the Court held, was whether the foreign corporation purposefully availed itself of the privilege of conducting business in the forum State. *Id.* at 297, 100 *S.Ct.* at 567. The Court explained, in dictum, the foundation of plaintiff's "stream of commerce" theory:

> Hence if the sale of a product of a manufacturer or distributor ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State. Compare *Gray v. American Radiator & Standard Sanitary Corp.*, 22 *Ill.*2d 432, 176 *N.E.*2d 761 (1961). [444 *U.S.* at 297–298, 100 *S.Ct.* at 567].

■■ In determining minimum contacts, a court properly focuses on "[t]he relationship among the defendant, the forum, and the litigation ..." *Shaffer v. Heitner*, 433 *U.S.* 186, 204, 97 *S.Ct.* 2569, 2579, 53 *L.Ed.*2d 683 (1977). *Accord, Keeton v. Hustler Magazine, Inc.*, — *U.S.* —, —, 104 *S.Ct.* 1473, 1478, 79 *L.Ed.*2d 790, 798 (1984); see also *Rush v. Savchuk*, 444 *U.S.* 320, 332, 100 *S.Ct.* 571, 579, 62 *L.Ed.*2d 516 (1980), and Note, " 'Minimum Contacts' Requirement of Fourteenth Amendment's Due Process Clause (Rule of *International Shoe Co. v. Washington*) for State Court's Assertion of Jurisdiction over Nonresident Defendant," 62 *L.Ed.*2d 853, 880 (1980). Due process does not preclude assertion of jurisdiction over a defendant based on a single transaction if the transaction gives rise to the cause of action asserted by plaintiff. *Brown v. American Broadcasting Co., Inc.*, 704 *F.*2d 1296, 1302 (4

Cir.1983); *Hardy v. Pioneer Parachute Co.*, 531 *F.*2d 193 (4 Cir.1976). *See Magee v. International Life Ins. Co., supra.*[2]

A number of recent federal, as well as New Jersey, cases hold that the dictum quoted above from *World-Wide Volkswagen Corp.* subjects a foreign manufacturer to jurisdiction whenever its products are deliberately marketed into the "stream of commerce" notwithstanding the presence of independent corporations in the chain of distribution. In *Coons v. Honda Motor Co., Ltd. of Japan,* 176 *N.J.Super.* 575, 580–581 (App.Div.1980), vacated on other grounds, 455 *U.S.* 996, 102 *S.Ct.* 1625, 71 *L.Ed.*2d 857 (1982), on remand 94 *N.J.* 307 (1983), on rehearing 96 *N.J.* 419 (1984), a Japanese automobile manufacturer appealed from an order denying its motion for summary judgment in a products liability action. We upheld *in personam* jurisdiction over the foreign corporation citing the dictum in *World-Wide Volkswagen Corp.* 176 *N.J.Super.* at 580. We further cited *Gelineau v. New York Univ. Hosp.,* 375 *F.Supp.* 661, 667 (D.N.J.1974) for the proposition that

> when a manufacturer deliberately seeks to profit from marketing its products in a State, he is doing business within that State as to each transaction, whether he does so by agent, directly by mail or even more directly through a third party, who may have exclusive distributorship. In such case there is nothing unfair, unjust or violative of due process standards in imposing *"in personam"* jurisdiction over such manufacturer in an action predicated upon that transaction. [*Coons,* 176 *N.J.Super.* at 579].

Even before *World-Wide Volkswagen,* this court in *Certisimo v. Heidelberg Co.,* 122 *N.J.Super.* 1, 5 (Law Div.1972), aff'd *sub nom. VanEeuwen v. Heidelberg Eastern, Inc.,* 124 *N.J.Super.* 251, 256 (App.Div.1973),[3] upheld service of a summons and

---

[2]Where the claims do not arise out of and are not related to the forum State the contacts of the defendant corporation to the forum are even more closely scrutinized. *See Helicopteros Nacionales de Columbia v. Hall,* —— U.S. ——, 104 *S.Ct.* 1868, 80 *L.Ed.*2d 404 (1984).

[3]On appeal these cases were consolidated and the opinion noted that the respective trial judges had broken new ground in adopting the stream of commerce theory, but this court found it unnecessary to reach the question since the proofs demonstrated that the sale of the foreign manufacturer's

complaint upon a German manufacturer, who had *no* contact with this State except that its product was purchased and installed in this State through a distributor. In *Certisimo,* Judge Byrne cited *Gray v. American Radiator v. Standard Sanitary Corp.,* 22 *Ill.*2d 432, 441, 176 *N.E.*2d 761, 766 (1961) (cited in *World-Wide Volkswagen*), which observed that

> while the record does not disclose the volume of Titan's [defendant manufacturer's] business or the territory in which appliances incorporating its valves are marketed, it is a reasonable inference that its commercial transactions, like those of other manufacturers, result in *substantial use and consumption* in this State. [122 *N.J.Super.* at 10].

In *Nelson By Carson v. Park Industries, Inc.,* 717 *F.*2d 1120 (7 Cir.1983), *cert.* den. —— *U.S.* ——, 104 *S.Ct.* 1277, 79 *L.Ed.*2d 682 (1984), United Garment, a Hong Kong corporation, manufactured shirts in Hong Kong. Woolworth's hired a Hong Kong exporter, Bunnan, to buy products for Woolworth's in the Far East. Bunnan bought several thousand shirts from United in Hong Kong and delivered them to Woolworth's, which in turn sold some of them in Wisconsin. One of these shirts caught fire after coming in contact with a cigarette lighter, injuring the infant plaintiff. Both foreign defendants were held subject to Wisconsin's long-arm statute since they were aware of the distribution scheme and "[d]erived economic benefit from selling the flannel shirts they placed into and moved along the stream of commerce." 717 *F.*2d at 1127. They should have reasonably anticipated being haled into court there. *Ibid.* It is not essential that plaintiff establish that the foreign manufacturer control its distribution system or personally solicit sales in the forum State. *Id.* at 1126, n. 6.

In *Hedrick v. Daiko Shoji Co., Ltd., Osaka,* 715 *F.*2d 1355 (9 Cir.1983), Daiko manufactured splices (a wire rope) in Japan, one of which was installed on a ship owned by a Japanese corporation. While the ship was unloading in Oregon a defective splice pulled loose and the ship's boom went out of control

products in New Jersey was not simply casual but intentional. 124 *N.J.Super.* at 255–256.

and struck plaintiff, an Oregon longshoreman working aboard the ship. Daiko was held subject to jurisdiction under Oregon's long-arm rule. Although Daiko produced splices only in Japan it manufactured "for a world-wide market and provides splices for ships that serve world ports." Id. at 1358.

> By contrast, in *World-Wide Volkswagen* the distributor served a market limited to three states of the northeastern United States. Provision of a part to an ocean-going common carrier is different from the sale of an automobile to a private party. The probability that the part sold to an ocean carrier will be used in a foreign port is not fortuitous. It is certain. [*Ibid.*]

"A manufacturer or supplier of a defective product who knew or should have known that a product would enter the stream of foreign commerce can be subjected, consistently with due process, to a forum State's long-arm jurisdiction and be sued in the forum where the injury occurred." *Ibid.*

Other cases adopting the stream of commerce rationale in the context of a personal injury products liability suit include *Noel v. S.S. Kresge Co.*, 669 *F.*2d 1150 (6 Cir.1982) (Japanese distributor of defective pliers manufactured in Korea liable to Ohio consumer whose brother-in-law purchased the item from a local K–Mart store), and *Oswalt v. Scripto, Inc.*, 616 *F.*2d 191 (5 Cir.1980) (Japanese manufacturer of lighter liable to Texas consumer who was injured by it).

A Federal District Court in a case similar to the present one applied the same principles in a contract action where plaintiff sought damages for breach of warranty. In *Copiers Typewriters Calculators v. Toshiba Corp.*, 576 *F.Supp.* 312 (D.Md. 1983), plaintiff, a Maryland retail seller of photocopiers, sought damages arising out of a defective copiers manufactured by Toshiba in Japan. Toshiba sold its products in Japan to TAI, a wholly-owned but independent subsidiary incorporated in New York with principal offices in New Jersey. TIA in turn sold the equipment to plaintiff. Following the dictum in *World-Wide Volkswagen* and the cases cited above (among others), the court held that in marketing its products in the United States, Toshiba placed its goods in the "stream of commerce" and thus it should have reasonably anticipated being haled into court in

any one of those states where its products were sold. *Id.* at 319–320. The existence of an independent subsidiary did not deprive the court of jurisdiction. *Id.* at 320. The court so held notwithstanding its findings by reason of separate directors and officers, separate corporate records and separate tax returns that TAI could not be deemed the general agent of Toshiba. *Id.* at 324.

Nippon stresses the fact that its two subsidiaries are separate and independent and are in no way agents for it. In *Nelson v. Park Industries, Inc., supra,* the Court of Appeals in upholding *in personam* jurisdiction distinguished *World-Wide Volkswagen* on the basis that there the suit was only against the regional distributor and retail dealer of the automobile whose market was limited to the tri-state area of New York, New Jersey and Connecticut. Also, there were no contacts between those defendants and the State of Oklahoma, *i.e.,* the product was not shipped to a consumer in Oklahoma, and the plaintiffs were not residences of Oklahoma. In distinguishing between local distributors, retailers, manufacturers and primary distributors, the court observed that

> [s]uch manufacturers and distributors purposely conduct their activities to make their product available for purchase in as many forums as possible. For this reason, a manufacturer or primary distributor may be subject to a particular forum's jurisdiction when a secondary distributor and retailer are not, because the manufacturer and primary distributor have intended to serve a broader market and they derive direct benefits from serving that market. [717 *F.*2d at 1125–1126].

A manufacturer places in a stream of commerce whether it controls the distribution of the product or not. *Id.* at 1126, n. 7. Evidence that a defendant manages its own distribution system or engages in other contacts with a forum presents a stronger case for exercising personal jurisdiction. *Id.* at n. 6. As this court stated in *Coons v. Honda Motor Co., Ltd. of Japan,*

> We are convinced that a foreign manufacturer may not successfully isolate itself completely from suit in this country by such an arrangement where its product is negligently manufactured abroad and delivered for sale here and then avoid responsibility by use of its exclusive agent or distributor. [176 *N.J.Super.* at 580–581].

That Nippon does business through independent exclusive distributorships is of no consequence. As we stated in *Van Eeuwen v. Heidelberg Eastern, Inc., supra,*

> That HDAG [German corporation] has elected to market its products in the United States through the grant of exclusive distributorships in specified areas to independent contractors rather than through its own sales organization is of little moment in considering whether it is fair and just that HDAG be subject to the jurisdiction of the court of a state in which the exclusive distributor has sold and delivered one of HDAG's presses. Pragmatically, the exclusive distributor, albeit that it is an independent contractor, is an "integral spoke in a wheel in which [HDAG] is the hub," *Hoagland v. Springer,* 75 *N.J.Super.* 560, 564 (App.Div.1962), aff'd o.b. 39 *N.J.* 32 (1962), a wheel created by HDAG to insure distribution and sale of its printing presses in New Jersey as well as in the other states included in Heidelberg Eastern's exclusive territory. [124 *N.J.Super.* at 257–258].

In *Ins. Co. of North America v. Marina Salina Cruz,* 649 *F.* 2d 1266, 1270 (9 Cir.1981), the Ninth Circuit noted seven factors that may be pertinent concerning the reasonableness of personal jurisdiction: (1) the extent of the defendant's purposeful interjection into the forum state; (2) the burden of defending in the forum state; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. *Id.* at 1270.

■ Applying those factors to the present case: (1) while the extent of Nippon's interjection of activities into New Jersey has not been established, it sent an alleged defective product into the world market with knowledge that harm could occur wherever the defect was manifest; (2) while Nippon's burden in defending an action in New Jersey is significant, plaintiff's burden in suing Nippon in Japan exceeds that of Nippon in defending in New Jersey; (3) New Jersey has a compelling interest in regulating the conduct of manufacturers who send alleged defective products into New Jersey; (4) Nippon has shown no conflict with any foreign interests of Japan sufficient to outweigh New Jersey's interest in litigating plaintiff's claim;

(5) New Jersey appears to be the most efficient forum to resolve the dispute. The evidence must be produced in New Jersey and the witnesses undoubtedly reside here or in the vicinity. New Jersey law would be likely to control; (6) availability of the New Jersey forum is important to plaintiff's chances for convenient and effective relief, and (7) while a Japanese forum may be available, it does not represent a practical alternative to plaintiff. *Cf. Hedrick v. Daiko Shoji Co., Ltd. supra*, 715 *F.*2d at 1359. To this list may be added that the presence of Nippon's products in New Jersey is not fortuitous but is the result of deliberate sales efforts through its distributors. Therefore, Nippon could reasonably anticipate being involved in litigation here. *Hendrickson v. Reg O Co.*, 657 *F.*2d 9, 15 (3 Cir.1981). The independent distributors in *Coons, Certisimo, Nelson, Toshiba* and *Hedrick* did not insulate the foreign manufacturer from *in personam* jurisdiction when their products were shipped into the forum. In view of the foregoing we therefore hold that Nippon is amenable to *in personam* service of process pursuant to *R.*4:4–4(c)(1).

However, Nippon has also raised the issue as to the validity of the service of the summons and complaint on its subsidiary, NEC Telephone in Melville, New York. This issue was not addressed by the trial judge. But the order appealed from states, "The attempted service of process by plaintiff on [Nippon] is hereby quashed and the complaint is dismissed." Nippon, although it discusses the merits of the order contends that the issue is not properly before the court. Plaintiff acknowledges that the trial judge never decided the question. Nonetheless, since the order has been entered and the appeal has been taken from the entire judgment we will proceed to consider the matter of service of the summons and complaint.

That part of the order which dismissed the complaint is in error. We agree that service of process is invalid but this is not a basis to dismiss the complaint; the complaint is not invalid. Service of a summons and complaint upon a subsidiary

is not sufficient service on a parent corporation. *Cintron v. W & D Machinery Co.*, 182 *N.J.Super.* 126 (Law Div.1981). Since we have determined that the complaint is to be reinstated, plaintiff may continue the litigation by proper service of process upon Nippon in accordance with *R.*4:4–4(c)(1). *Local 617, Etc. v. Hudson Bergen Trucking Co.*, 182 *N.J.Super.* 16, 22 (App.Div.1981).

The judgment quashing service of process and dismissing the complaint is reversed; the complaint is reinstated and the matter is remanded for further proceedings.