[S.F. No. 24657. July 25, 1985.]

ASAHI METAL INDUSTRY CO., LTD., Petitioner, v.
THE SUPERIOR COURT OF SOLANO COUNTY, Respondent;
CHENG SHIN RUBBER INDUSTRIAL CO., LTD.,
Real Party in Interest.

38

**40**

---

COUNSEL

David W. Condeff, Richard D. Hoffman and Lillick, McHose & Charles for Petitioner.

No appearance for Respondent.

Ronald R. Haven and Shepard & Haven for Real Party in Interest.

Michael J. Breining, Robert E. Cartwright, Leonard Sacks, Wylie A. Aiken, Glen T. Bashore, Ray Bourhis, Richard D. Bridgman, Edwin Train Caldwell, David S. Casey, Jr., Douglas K. de Vries, H. Greig Fowler, Sanford M. Gage, Ian Herzog, G. Dana Hobart, Stanley K. Jacobs, Harvey R. Levine, John C. McCarthy, Timothy W. Peach, Joseph Posner, John M. Van Dyke, Arne Werchick, Stephen I. Zetterberg, Fischer & Hill, Dennis A. Fischer and Melissa Hill as Amici Curiae on behalf of Respondent and Real Party in Interest.

---

OPINION

**BIRD, C. J.**—Can California constitutionally exercise personal jurisdiction over a manufacturer of component parts who made no direct sales in California but had knowledge that a substantial number of its parts would be incorporated into finished products sold in the state?

I.

In 1978, Gary Zurcher was severely injured when he lost control of his Honda motorcycle and collided with a tractor rig. His passenger and wife,

Ruth Ann Moreno, was killed. The accident was allegedly caused by a sudden loss of air and an explosion in the rear tire of the motorcycle. Both Zurcher and Moreno were California residents. The collision occurred on a California highway.

Zurcher filed a products liability action alleging that the motorcycle tire, tube, and sealant were defective. Zurcher's complaint named, inter alia, Cheng Shin Rubber Industrial Co., Ltd. (Cheng Shin), the Taiwanese manufacturer of the tube, and Sterling May Company, Inc., the California retailer. Cheng Shin, in turn, filed a cross-complaint seeking indemnity from its codefendants and from Asahi Metal Industry Co., Ltd. (Asahi), the manufacturer of the tube's valve assembly.

Asahi is a major Japanese producer of valve assemblies. Its product is incorporated into tubes sold throughout the world, including tubes sold to the large motorcycle manufacturers. The declarations presented to the trial court established that Asahi has the following contacts in California.

For 10 years, Asahi has done business with Cheng Shin, a tube manufacturer that makes 20 percent of its United States sales in California. Between 1978 and 1982, Asahi sold 1,350,000 valve assemblies to Cheng Shin. Such sales represented 1.24 percent of Asahi's gross income in 1981 and .44 percent of its gross income in 1982. In addition, Asahi valve assemblies are incorporated into the tubes of numerous other manufacturers selling tubes in California.[1]

Asahi moved to quash service of summons. The trial court denied the motion, finding that Asahi had the requisite minimum contacts with California and that jurisdiction was fair and reasonable. The trial court relied on (1) the significant number of tubes with Asahi valve assemblies sold in California, (2) the number of valve assemblies Asahi sold to Cheng Shin, (3) Cheng Shin's substantial business with California, and (4) Asahi's knowledge that its valve assemblies would be incorporated into tubes sold in California.

Asahi now seeks a writ of mandate compelling the trial court to grant its motion to quash service of summons.

---

[1]At the hearing on the motion to quash service of summons, Cheng Shin presented the declaration of one of its lawyers, who described his survey of the store operated by defendant Sterling May Company, Inc. Of the 97 Japanese or Taiwanese tubes offered for sale, 21 of the tubes or 22 percent contained Asahi valve assemblies. (The store offered fewer than 20 tubes that were not manufactured in Taiwan or Japan.)

## II.

California's long-arm statute provides that it can exercise jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States." (Code Civ. Proc., § 410.10.) Asahi contends that its connection with California does not warrant jurisdiction. It cites the due process clause of the Fourteenth Amendment of the United States Constitution, which bars the states from entering judgments affecting the rights or interests of a nonresident defendant absent such "minimum contacts" with the state that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (*Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316 [90 L.Ed.95, 102, 66 S.Ct. 154, 161 A.L.R. 1057] [hereafter *International Shoe*], quoting *Milliken* v. *Meyer* (1940) 311 U.S. 457, 463 [85 L.Ed.278, 283, 61 S.Ct. 339, 132 A.L.R. 1357].)

 As the United States Supreme Court noted in *International Shoe,* the minimum contacts test is not "mechanical or quantitative," but depends upon the "quality and nature" of the defendant's activities within the state. (*International Shoe, supra,* 326 U.S. at p. 319 [90 L.Ed. at p. 104].) If a nonresident corporation's activities are sufficiently wide-ranging, systematic, and continuous, it may be subject to jurisdiction within the state on a cause of action unrelated to those activities. (*Id.,* at p. 318 [90 L.Ed. at p. 103]; *Secrest Machine Corp.* v. *Superior Court* (1983) 33 Cal.3d 664, 669 [190 Cal.Rptr. 175, 660 P.2d 399]; *Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893, 898-899 [80 Cal.Rptr. 113, 458 P.2d 57].) Where the activity is less extensive, the cause of action "must arise out of or be connected with the defendant's forum-related activity." (*Buckeye Boiler, supra,* 71 Cal.2d at p. 899; see also *Secrest, supra,* 33 Cal.3d at p. 669.)

 Thus, in determining whether the defendant's contacts with the forum are sufficient to warrant jurisdiction, the courts must focus on "the relationship among the defendant, the forum, and the litigation." (*Shaffer* v. *Heitner* (1977) 433 U.S. 186, 204 [53 L.Ed.2d 683, 698, 97 S.Ct. 2569]; accord *Secrest, supra,* 33 Cal.3d at p. 668.) "The relationship between the defendant and the forum must be such that it is 'reasonable . . . to require the corporation to defend *the particular suit* which is brought there.'" (*World-Wide Volkswagen Corp.* v. *Woodson* (1980) 444 U.S. 286, 292 [62 L.Ed.2d 490, 498, 100 S.Ct. 559], quoting *International Shoe, supra,* 326 U.S. at p. 317 [90 L.Ed. at p. 102], italics added.)

In the 40 years since *International Shoe* was decided, the minimum contacts standard has been "substantially relaxed." (*World-Wide Volkswagen, supra,* 444 U.S. at p. 292 [62 L.Ed.2d at p. 498].) In *McGee v. International Life Ins. Co.* (1957) 355 U.S. 220 [2 L.Ed.2d 223, 78 S.Ct. 199], the Supreme Court described the reason for liberalizing the rule. "In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." (*Id.,* at pp. 222-223 [2 L.Ed.2d at p. 226].) Moreover, as the Supreme Court observed in *Worldwide Volkswagen,* "[t]he historical developments noted in *McGee* . . . have only accelerated in the generation since that case was decided." (444 U.S. at p. 293 [62 L.Ed.2d at pp. 498-499].)

However, liberalization of the minimum contacts rule has not proceeded unabated. ■ Shortly after *McGee* was decided, the Supreme Court warned that the state courts' jurisdiction over nonresidents is not limited solely by the inconvenience of litigating in a foreign tribunal. In addition to protecting defendants from the burdens of "distant litigation," the jurisdictional limits imposed by the due process clause "are a consequence of the territorial limitations on the power of the respective States." (*Hanson v. Denckla* (1958) 357 U.S. 235, 251 [2 L.Ed.2d 1283, 1296, 78 S.Ct. 1228].)

Therefore, even when a nonresident defendant would suffer only minor inconvenience as a result of the exercise of jurisdiction, "minimal contacts" with the forum are constitutionally required. (*Ibid.*) ■ The *Hanson* court did not define the "minimal contacts" requirement except to hold that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (*Id.,* at p. 253 [2 L.Ed.2d at p. 1298].)

More than 20 years after the *Hanson* decision, the Supreme Court applied the "purposefully avails" standard to an action for products liability. (See *World-Wide Volkswagen, supra,* 444 U.S. 286, 297-298 [62 L.Ed.2d 490, 501-502].) As in *Hanson,* the court in *World-Wide Volkswagen* stressed the limitations of the states' jurisdiction over nonresidents, citing principles of "interstate federalism." (*Id.,* at pp. 293-294 [62 L.Ed.2d at p. 499].) Applying these principles, the court held the defendants' contacts with the

forum insufficient to warrant jurisdiction. (*Id.*, at p. 299 [62 L.Ed.2d at p. 502].)

Plaintiffs in *World-Wide Volkswagen* sued the manufacturer, importer, regional distributor, and retailer of their car for damages arising out of an automobile accident. The regional distributor (World-Wide) sold vehicles, parts, and accessories to dealers in New York, New Jersey, and Connecticut. The retailer (Seaway) sold cars only in New York, where plaintiffs purchased their car. Neither the distributor nor the retailer did any business in Oklahoma or shipped products to Oklahoma. (*Id.*, at pp. 288-289 [62 L.Ed.2d at p. 496].)

The accident occurred in Oklahoma as plaintiffs were driving across the country. There was no evidence that any cars sold by World-Wide or Seaway had entered the state in the past. The Supreme Court found that Oklahoma lacked jurisdiction over World-Wide and Seaway because neither corporation sold cars to Oklahoma customers nor "indirectly, through others, serve[d] or [sought] to serve the Oklahoma market." (*Id.*, at p. 295 [62 L.Ed.2d at p. 500].)

Plaintiffs in *World-Wide Volkswagen* argued that jurisdiction was proper because their automobile's inherent mobility made it foreseeable that the car would cause injury in Oklahoma. The court rejected this contention on the ground that under such reasoning "[e]very seller of chattels would in effect appoint the chattel his agent for service of process." (*Id.*, at p. 296 [62 L.Ed.2d at p. 501].) ■ However, the court held that foreseeability was relevant to the determination of minimum contacts. "[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." (*Id.*, at p. 297 [62 L.Ed.2d at p. 501]; accord *Kulko* v. *California Superior Court* (1978) 436 U.S. 84, 97-98 [56 L.Ed.2d 132, 144-145, 98 S.Ct. 1690]; *Shaffer* v. *Heitner, supra,* 433 U.S. at p. 216 [53 L.Ed.2d at p. 705].)

The court in *World-Wide Volkswagen* reasoned that when a defendant's conduct is such that he " 'purposefully avails [himself] of the privilege of conducting activities within the forum State,' " he is put on notice that he can be sued in the state. (*World-Wide Volkswagen, supra,* 444 U.S. at p. 297 [62 L.Ed.2d at p. 501].) He can "alleviate the risk" by buying insurance, passing the potential litigation costs on to his customers, or curtailing his activities in the forum state. (*Ibid.*)

■ Thus, "if the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." (*Id.,* at pp. 297-298 [62 L.Ed.2d at pp. 501-502].)

The opinion in *World-Wide Volkswagen* distinguishes a local retailer or distributor, such as Seaway or World-Wide, from a major "manufacturer or distributor such as Audi or Volkswagen." (*World-Wide Volkswagen, supra,* 444 U.S. at pp. 297-298 [62 L.Ed.2d at pp. 501-502].) Although it was foreseeable that cars distributed by World-Wide and sold by Seaway would be driven to Oklahoma, neither Seaway nor World-Wide received a substantial financial benefit "by virtue of the fact that their products [were] capable of use in Oklahoma." (*Id.,* at p. 299 [62 L.Ed.2d at p. 502].)

■ However, when a manufacturer "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State" (*id.,* at p. 298 [62 L.Ed.2d at p. 502]), the manufacturer "benefits legally from the protection provided by the laws of the forum state for its products, as well as economically from indirect sales to forum residents." (*DeJames* v. *Magnificence Carriers, Inc.* (3d Cir. 1981) 654 F.2d 280, 285.) In such a situation, jurisdiction is reasonable because the manufacturer or distributor has invoked the benefits and protections of the forum's laws. (*Nelson by Carson* v. *Park Industries, Inc.* (7th Cir. 1983) 717 F.2d 1120, 1125-1126; *DeJames, supra,* 654 F.2d at p. 285; see also *International Shoe, supra,* 326 U.S. at p. 319 [90 L.Ed. at p. 104].)

*World-Wide Volkswagen*'s distinction between businesses that serve a local market and those that directly or "indirectly, through others," serve a broader market, has been explained as follows: "The two defendants in *World-Wide Volkswagen* who were not amenable to Oklahoma jurisdiction were at the end of the automobile's distribution system. The scope of the foreseeable market served by those defendants and of the benefits those defendants derived from the sale of the product was narrow. In contrast, the relevant scope is generally broader with respect to manufacturers and primary distributors of products who are at the start of a distribution system and who thereby serve, directly or indirectly, and derive economic benefit from a wider market. Such manufacturers and distributors purposely con-

duct their activities to make their product available for purchase in as many forums as possible. For this reason, a manufacturer or primary distributor may be subject to a particular forum's jurisdiction when a secondary distributor and retailer are not, because the manufacturer and primary distributor have intended to serve a broader market and they derive direct benefits from serving that market." (*Nelson, supra,* 717 F.2d at pp. 1125-1126; see also *DeJames, supra,* 654 F.2d at p. 286; *Rockwell Intern. Corp.* v. *Costruzioni Aeronautiche* (E.D.Pa. 1982) 553 F.Supp. 328, 332.)

In *Nelson,* the Seventh Circuit held that a Hong Kong manufacturer and a Hong Kong exporter of flannel shirts should reasonably have anticipated being haled into court in Wisconsin because their product was sold in the state and caused injury there. (*Nelson, supra,* 717 F.2d at pp. 1125-1127.) The manufacturer and the exporter argued that they were not subject to jurisdiction because they did not control the distribution of the product and were not responsible for the shirt's presence in Wisconsin. However, the court found that both defendants knew that they were introducing the product into the retailer's national distribution system. On the basis of this knowledge, the court held that the manufacturer and the exporter indirectly served and derived benefits from the national marketing of their product. Therefore, jurisdiction was proper under *World-Wide Volkswagen.* (*Nelson, supra,* 717 F.2d at pp. 1126-1127 & fn. 7.)

The stream of commerce theory approved in *World-Wide Volkswagen* has also been applied to component part manufacturers. (See *Rockwell, supra,* 553 F.Supp. 328; *Volkswagenwerk, A.G.* v. *Klippan, GmbH* (Ala. 1980) 611 P.2d 498 [hereafter *Klippan*]; cf. *Hedrick* v. *Daiko Shoji Co., Ltd., Osaka* (9th Cir. 1983) 715 F.2d 1355.)[2] In fact, the court in *World-Wide Volkswagen* cited a component parts case, *Gray* v. *American Radiator & Standard Sanitary Corp.* (1961) 22 Ill.2d 432 [176 N.E.2d 761], as support for the proposition that jurisdiction over a nonresident defendant is constitutional where the defendant "delivers its products into the stream of com-

---

[2]In *Hedrick,* the Ninth Circuit applied the stream of commerce theory to a foreign component part manufacturer that produced a splice used on an ocean-going carrier. The court held that jurisdiction was proper because "[t]he splice caused an injury . . . in a port that was within the expected service area of [the carrier's] customers." (*Hedrick, supra,* 715 F.2d at p. 1358.) The splice at issue in *Hedrick* was used, but not sold, in the forum state.

In contrast, the component parts in *Rockwell* and *Klippan* and the valve assemblies at issue here were sold in the forum state as part of finished products. Therefore, jurisdiction was proper under *World-Wide Volkswagen*'s requirement that the manufacturer "deliver[] its products into the stream of commerce with the expectation that they will be *purchased* by consumers in the forum State." (*World-Wide Volkswagen, supra,* 444 U.S. at p. 298 [62 L.Ed.2d at p. 502], italics added.) It is doubtful that the mere expectation of use in the forum is sufficient to establish minimum contacts under *World-Wide Volkswagen.*

merce with the expectation that they will be purchased in the forum State." (*World-Wide Volkswagen, supra,* 444 U.S. at p. 298 [62 L.Ed.2d at p. 502].) As *Gray* illustrates, the stream of commerce theory is not relevant solely to manufacturers of component parts whose products are incorporated into finished products sold in the forum state. (See *Gray, supra,* 176 N.E.2d at p. 766; see also *Buckeye Boiler, supra,* 71 Cal.2d at pp. 902-903.)

The plaintiff in *Gray* sued an Ohio manufacturer, Titan Valve Manufacturing Company, for injuries sustained when a hot water heater containing a Titan safety valve exploded. The accident occurred in Illinois. The hot water heater was manufactured in Pennsylvania by American Radiator & Standard Sanitary Corp. and was sold to an Illinois consumer "in the course of commerce." (*Gray, supra,* 176 N.E.2d at p. 764.)

Titan neither sold the safety valve in Illinois nor delivered the valve into the state. Nevertheless, the court inferred that Titan's "commercial transactions" elsewhere resulted in a substantial purchase in Illinois of products containing Titan safety valves. Titan enjoyed a benefit, albeit indirect, from the protection of Illinois law vis-à-vis "the marketing of hot water heaters containing its valves." (*Id.,* at p. 766.) Therefore, Titan was subject to personal jurisdiction in Illinois. (*Id.,* at p. 767.)

### III.

Each party to this dispute relies on *World-Wide Volkswagen* to support its position. Cheng Shin argues that the stream of commerce doctrine, approved in *World-Wide Volkswagen,* applies to Asahi as a manufacturer of component parts. Asahi, on the other hand, contends that there is no basis for jurisdiction in California other than the foreseeability that its product would enter the state. Asahi argues that such foreseeability is insufficient to establish jurisdiction under the rule in *World-Wide Volkswagen.*

Contrary to Asahi's assertions, the facts of this case are not analogous to the situation in *World-Wide Volkswagen.* In *World-Wide Volkswagen,* the car was sold in New York and driven to the forum state by the consumer. Its presence in the forum state was fortuitous. Asahi's valve assembly, on the other hand, was sold in the forum state as part of a finished product. It reached California in the stream of commerce. (See *World-Wide Volkswagen, supra,* 444 U.S. at p. 298 [62 L.Ed.2d at p. 502]; *Nelson, supra,* 717 F.2d at p. 1126; *Gray, supra,* 176 N.E.2d at p. 766.) Therefore, the stream of commerce rule announced in *World-Wide Volkswagen* provides a possible

basis for jurisdiction. (See *World-Wide Volkswagen, supra,* 444 U.S. at pp. 297-298 [62 L.Ed.2d at pp. 501-502].)[3]

Asahi has no offices, property or agents in California. It solicits no business in California and has made no direct sales here. However, Asahi's indirect business here, through Cheng Shin and others, is substantial. (See *ante,* p. 41.) Moreover, Asahi knew that some of the valve assemblies sold to Cheng Shin would be incorporated into tubes sold in California.[4] Given the substantial nature of Asahi's indirect business with California, and its expectation that its product would be sold in the state, Asahi "should reasonably [have] anticipate[d] being haled into court [here]." (*World-Wide Volkswagen, supra,* 444 U.S. at p. 297 [62 L.Ed.2d at p. 501].)

When Asahi sold valve assemblies to Cheng Shin with knowledge that they would be placed in tubes sold in California, it purposefully availed itself of the California market and the benefits and protections of California's laws. (*Plant Food Co-op* v. *Wolfkill Feed & Fertilizer* (9th Cir. 1980)

---

[3]The distinction between the foreseeability of use in the forum and the expectation of sale in the forum is critical to the rationale of *World-Wide Volkswagen.* (*Id.,* at pp. 296-298 [62 L.Ed.2d at pp. 500-502].) The dissent ignores this distinction. (See dis. opn., *post,* at p. 55, fn. 1.) Specifically, the dissent rejects the argument that jurisdiction is proper in light of Asahi's expectation that its products would be sold in California. (Dis. opn., *post,* at p. 55.) According to the dissent, such an argument mistakes foreseeability for intent and adopts the position advocated by Justice Marshall in his dissenting opinion in *World-Wide Volkswagen.* (Dis. opn., *post,* at p. 55, fn. 1.)

However, the majority in *World-Wide Volkswagen* specifically held that jurisdiction is proper where a corporation "delivers its products into the stream of commerce *with the expectation that they will be purchased by consumers in the forum State."* (*World-Wide Volkswagen, supra,* 444 U.S. at pp. 297-298 [62 L.Ed.2d at p. 502], italics added.) In contrast, Justice Marshall argued in his dissenting opinion that although the automobile at issue in *World-Wide Volkswagen* was not sold, but only used in the forum state, jurisdiction was proper because the nature of automobiles is such that defendants could have foreseen that a substantial portion of the cars they sold would travel outside New York. (*Id.,* at p. 314 [62 L.Ed.2d at p. 512] (dis. opn. of Marshall, J.).)

Unlike Justice Marshall's dissent, today's decision is not based on a theory of foreseeability of use. Instead, jurisdiction is based on the finding that Asahi delivered its valve assemblies into the stream of commerce with the expectation that they would be incorporated into products sold to consumers in California.

[4]The affidavit of one of Cheng Shin's managers declares that "[i]n discussions with Asahi regarding the purchase of valve stem assemblies the fact that my Company sells tubes throughout the world and specifically the United States has been discussed. I am informed and believe that Asahi was fully aware that valve stem assemblies sold to my company and to others would end up throughout the United States and in California." Asahi does not claim to have been unaware that some of its valve assemblies sold to Cheng Shin would be incorporated into tubes sold in California. Instead, it argues that "Asahi has never contemplated that its limited sales of tire valves to Cheng Shin in Taiwan would subject it to lawsuits in California."

633 F.2d 155, 159-160; *Nelson, supra,* 717 F.2d at p. 1126; *Gray, supra,* 176 N.E.2d at p. 766; cf. *DeJames, supra,* 654 F.2d at p. 285.)[5]

Although Asahi did not design or control the system of distribution that carried its valve assemblies into California, Asahi was aware of the distribution system's operation, and it knew that it would benefit economically from the sale in California of products incorporating its components. (See *Nelson, supra,* 717 F.2d at pp. 1126-1127.) Thus, Asahi's contacts with the state are sufficient to permit California, consistent with the requirements of due process, to exercise jurisdiction over Asahi in an action arising from those contacts.[6]

However, Asahi argues that jurisdiction is constitutionally improper here because Asahi did not "purposefully avail[] itself of the privilege of conducting activities within the forum State." (*Hanson, supra,* 357 U.S. at p. 253 [2 L.Ed.2d at p. 1298].) According to Asahi, the stream of commerce theory approved in *World-Wide Volkswagen* is not applicable unless the defendant actively attempts to exploit the forum's market. ██ For example, the defendant might either develop an indirect marketing scheme to serve the forum state, or design its product with an eye toward compliance with the forum's rules and regulations.[7]

---

[5]The dissent relies on a percentage of income approach to argue that Asahi did not purposefully avail itself of the California market. The dissent speculates that sales of valve assemblies incorporated into Cheng Shin's California-bound products represented no more than .25 percent of Asahi's gross income. However, the numerical corollary to this "miniscule" percentage is the sale of 270,000 Asahi valve assemblies in California in the years 1978 through 1982.

Although this numerical corollary, like the dissent's income percentage, is based on "sheer speculation," Cheng Shin also presented evidence that at least 18 percent of the tubes sold in a particular California motorcycle supply shop contained Asahi valve assemblies. (See *ante,* at p. 41, fn. 1.) The trial court could reasonably have inferred that this percentage reflected the percentage of Asahi valves found in tubes sold throughout the state. A statewide presence of this magnitude does not constitute the sort of "isolated occurrence" that the court in *World-Wide Volkswagen* found would be an insufficient basis for jurisdiction. (See *World-Wide Volkswagen, supra,* 444 U.S. at p. 297 [62 L.Ed.2d at p. 501].) As the trial court held, the declarations filed in this case established "a volume of Asahi tire valves in this jurisdiction sufficient to indicate that Asahi's availing itself of this market was not an isolated occurrence."

[6]Since Cheng Shin's action against Asahi arises from Asahi's forum-related activity, this court need not decide whether Asahi's contact with the state "reaches such extensive or wide-ranging proportions as to make [it] sufficiently 'present' in the forum state to support jurisdiction over it concerning causes of action which are unrelated to that activity." (*Buckeye Boiler, supra,* 71 Cal.2d at pp. 898-899; see also *ante,* at p. 42.)

[7]In a related argument Asahi relies on the statement in *Hanson* v. *Denckla* that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." (357 U.S. at p. 253 [2 L.Ed.2d at p. 1298].) Asahi contends that Cheng Shin's sale of tubes in California constituted such "unilateral activity." This argument ignores the plain import of the stream of commerce

■ Asahi's argument misreads *World-Wide Volkswagen.* The court in *World-Wide Volkswagen* held that the due process clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." (*World-Wide Volkswagen, supra,* 444 U.S. at p. 297 [62 L.Ed.2d at p. 501].) The court described the function of the "purposefully avails" requirement as follows: "When a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State,' [citation], it has clear notice that it is subject to suit [in the forum], and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State." (*Ibid.* [62 L.Ed.2d at p. 501].)

■ That requirement is satisfied where, as here, a component parts manufacturer intentionally sells its products to another manufacturer, knowing that the component parts will be incorporated into finished products sold in the forum state. In such a situation, the component part manufacturer can structure its conduct to protect itself from the risk of liability in the forum state.

■ *World-Wide Volkswagen* did not require that the defendant endeavor to market its products in the forum state. It required only that the defendant "delivers its products into the stream of commerce with *the expectation* that they will be purchased by consumers in the forum State." (*World-Wide Volkswagen, supra,* 444 U.S. at p. 298 [62 L.Ed.2d at p. 502], italics added.) In stating this requirement, the court relied on *Gray, supra,* 176 N.E.2d 761. In *Gray,* the nonresident component part manufacturer was subjected to jurisdiction in the forum state on the ground that it received a benefit when products incorporating its parts were sold in the

theory adopted in *World-Wide Volkswagen.*

By definition, in a stream of commerce case the defendant neither sells the product in the forum state nor ships the product into the state. The sale is necessarily made by another entity. Nevertheless, the defendant is subject to jurisdiction because it delivers its products into the stream of commerce "with the expectation that they will be purchased by consumers in the forum State." (*World-Wide Volkswagen, supra,* 444 U.S. at p. 298 [62 L.Ed.2d at p. 502].) Such a defendant purposefully avails itself of the benefits and protections of the forum's laws and derives an economic benefit from indirect sales to forum residents. (See *Nelson, supra,* 717 F.2d at pp. 1125-1126; *DeJames, supra,* 654 F.2d at p. 285; *Plant Food Co-op, supra,* 633 F.2d at p. 159; see also *World-Wide Volkswagen, supra,* 444 U.S. at pp. 297-298 [62 L.Ed.2d at pp. 501-502].) Therefore, jurisdiction is based on the defendant's forum-related activity, not on the "unilateral activity" of other participants in the chain of distribution. Neither the defendant in *Hanson* nor the defendants in *World-Wide Volkswagen* engaged in such forum-related activity. (See *Hanson, supra,* 357 U.S. at pp. 251-254 [2 L.Ed.2d at p. 1296-1298]; *World-Wide Volkswagen, supra,* 444 U.S. at p. 298 [62 L.Ed.2d at p. 502].)

forum. (*Id.*, at p. 766; see *ante,* at p. 46.) The defendant in *Gray* made no efforts to serve the forum's market other than selling its parts to a manufacturer in "contemplation" of their consumption in the forum. (*Ibid.*)

In *Nelson, supra,* 717 F.2d 1120, the Seventh Circuit addressed the issue presented here—whether knowledge of the distribution system satisfies the expectation requirement of *World-Wide Volkswagen.* (*Nelson, supra,* 717 F.2d at p. 1126, fn. 7.) The court in *Nelson* held that a foreign manufacturer or distributor need not originate or control the distribution system that brought its product into the retailer's nationwide market. (*Id.*, at p. 1126; see *ante,* at p. 46.) "[A] critical fact is whether those defendants were aware of that distribution system. If they were aware, they were indirectly serving and deriving economic benefits from the national retail market established by [the retailer], and they should reasonably anticipate being subject to suit in any forum within that market where their product caused injury." (*Ibid.;* see also *Plant Food Co-op, supra,* 633 F.2d at pp. 159-160.)

Asahi relies on two cases which involve manufacturers who were more actively involved than Asahi in serving the forum's markets. (See *Rockwell, supra,* 553 F.Supp. 328; *Klippan, supra,* 611 P.2d 498.) However, neither case holds that an expectation of sales in the forum is insufficient contact under *World-Wide Volkswagen.* Therefore, neither case is inconsistent with *Nelson.*

In *Rockwell,* the federal district court held a foreign component part manufacturer subject to jurisdiction in Pennsylvania on the ground, inter alia, that its component was custom-designed for a foreign manufacturer who served the European and American markets. (*Rockwell, supra,* 553 F.Supp. at pp. 333-334.) In *Klippan,* the Alaska Supreme Court held that a foreign seat belt manufacturer was subject to jurisdiction in the state because it designed its product in anticipation of American sales and had knowledge that its product would be incorporated in cars sold throughout the United States. (*Klippan, supra,* 611 P.2d at p. 501.)

Of course, *Nelson* is not binding on this court, nor are *Rockwell* and *Klippan.* The rule in *Nelson,* however, is consistent with *World-Wide Volkswagen*'s statement that jurisdiction is permissible under the stream of commerce theory where the defendant expects its products to be sold in the forum state. (*World-Wide Volkswagen, supra,* 444 U.S. at pp. 297-298 [62 L.Ed.2d at p. 502].) Absent such a rule, a major manufacturer who benefits greatly from the sale of a substantial number of its products in California could nevertheless avoid the jurisdiction of the California courts. Therefore, this court finds that the minimum contacts requirement is satisfied where,

as here, the manufacturer is aware that a substantial number of its products will be sold in the forum state.

However, the finding that Asahi's contacts with California are sufficient to satisfy the minimum contacts test does not conclude the inquiry. If minimum contacts exist, the due process clause also requires this court to determine whether jurisdiction is fair and reasonable. (*World-Wide Volkswagen, supra,* 444 U.S. at p. 292 [62 L.Ed.2d at p. 498]; *Secrest, supra,* 33 Cal.3d at p. 672; *Buckeye Boiler, supra,* 71 Cal.2d at p. 899.) The court must balance "the inconvenience to the defendant in having to defend itself in the forum state against both the interest of the plaintiff in suing locally and the interrelated interest of the state in assuming jurisdiction." (*Buckeye Boiler, supra,* 71 Cal.2d at p. 899; accord *Secrest, supra,* 33 Cal.3d at p. 672.)[8]

Asahi argues that California has no interest in exercising jurisdiction here because the California plaintiffs did not name Asahi as a defendant. According to Asahi, California has no interest in adjudicating an indemnity dispute between two foreign manufacturers.[9] However, "[t]he fact that the party seeking indemnity or contribution is a foreign corporation rather than the original injured plaintiff is not a justification for immunizing an ultimately responsible party from liability under the laws of the state where the injury occurred . . . ." (*Klippan, supra,* 611 P.2d at p. 502.) California's interest is not as strong here as it would be if it were directly providing "an effective means of redress for its residents." (*McGee* v. *International Life Ins. Co., supra,* 355 U.S. at p. 223 [2 L.Ed.2d at p. 226].) Nevertheless, California's interest in asserting jurisdiction over Asahi in this action is substantial.

---

[8]In light of the heavy emphasis on defendant-forum contacts in *World-Wide Volkswagen,* the continuing relevance of the fairness determination is unclear. For example, one commentator has noted that having found defendant's contacts sufficient to meet the requirements of *World-Wide Volkswagen,* a court is unlikely to rule that jurisdiction is unreasonable. (Note, *World-Wide Volkswagen Corp. v. Woodson: Minimum Contacts in a Modern World* (1981) 8 Pepperdine L.Rev. 783, 795, fn. 71, 803 & fn. 111.)

Although the court in *World-Wide Volkswagen* noted the relevance of the fairness considerations, i.e., the convenience of the parties and the interest of the forum state (*World-Wide Volkswagen, supra,* 444 U.S. at p. 292 [62 L.Ed.2d at p. 498]), it did not apply these considerations to the case at hand. Instead, the court focused on the defendants' conduct and held that conduct insufficient to establish the requisite minimum contacts. (*Id.,* at pp. 297-299 [62 L.Ed.2d at pp. 501-502].)

[9]Subsequent to the filing of the petition for hearing herein, plaintiffs' complaint was dismissed with prejudice, presumably pursuant to a settlement. The cross-complaints were not dismissed. Asahi asks this court to take judicial notice of the dismissal pursuant to Evidence Code sections 452 and 459. Asahi's request for judicial notice is hereby granted. However, the dismissal has no bearing on the propriety of California's exercise of jurisdiction over Asahi.

First, California has a strong interest in protecting its consumers by ensuring that foreign manufacturers comply with the state's safety standards. (See *Hedrick, supra,* 715 F.2d at p. 1359.) Second, from the standpoint of the orderly administration of its laws, California has an interest in assuming jurisdiction where, as here, "most of the evidence, testimonial and otherwise, is within its borders . . . ." (*Buckeye Boiler, supra,* 71 Cal.2d at p. 899; *Secrest, supra,* 33 Cal.3d at p. 672.) Finally, Cheng Shin has named numerous defendants in its cross-complaint. Thus, there is a possibility of inconsistent verdicts if Asahi cannot be sued in California with the other cross-defendants. Both Cheng Shin and California have an interest in preventing "multiple and possibly conflicting adjudications." (*Buckeye Boiler, supra,* 71 Cal.2d at p. 900.)[10]

Asahi presents no evidence to support its contention that it would be inconvenienced if it is subjected to California's jurisdiction. Presumably, its inconvenience would stem from the inherent burden of litigating in a foreign country. However, this inconvenience does not outweigh California's interest in asserting jurisdiction or Cheng Shin's interest in litigating all its claims in California. Therefore, California's exercise of jurisdiction over Asahi in this action is fair and reasonable.

## IV.

For over 10 years, Asahi has profited from its business relationship with Cheng Shin. This relationship has resulted in Asahi's sale of 1,350,000 valve assemblies. Cheng Shin does a substantial business with the United States, particularly with California, and Asahi knew that its valve assemblies would be incorporated into tubes sold by Cheng Shin in California.

Thus, Asahi introduced its products into the stream of commerce with the expectation that they would be sold in California. This conduct satisfies the

---

[10]Contrary to the dissent's assertion, California's interest in this litigation did not evaporate when plaintiffs dismissed their action with prejudice. (See dis. opn., *post,* at p. 55.) The cross-complaints in this action are still pending in California. Although plaintiffs have been compensated, the California courts have not yet determined how liability will be apportioned. For this purpose, California has an interest in asserting jurisdiction over Asahi. Apart from providing a forum to California plaintiffs to ensure that they are compensated, California has an interest in enforcing its safety standards and in deterring Asahi and other foreign manufacturers from shipping defective products into the state.

Moreover, California's interest in enforcing its safety standards is not diminished because plaintiffs "showed no interest in Asahi" (dis. opn., *post,* at p. 55.). Due to the cost and complexity of effecting service on a foreign defendant, plaintiffs may have made a strategic decision not to pursue Asahi, particularly in light of the numerous domestic defendants who were potentially liable for plaintiffs' injuries. Finally, the fact that Cheng Shin waited a year to file its cross-complaint against Asahi and others is not relevant to California's interest in asserting jurisdiction over Asahi.

constitutional requirement of minimum contacts with the forum state. Moreover, jurisdiction in California is fair and reasonable given California's interest in protecting its consumers, and the interests of California and Cheng Shin in avoiding inconsistent results and a multiplicity of litigation. Accordingly, the trial court's order denying Asahi's motion to quash service of summons was proper. The petition for writ of mandate is denied and the alternative writ is discharged.

Kaus, J., Broussard, J., Reynoso, J., and Grodin, J., concurred.

**LUCAS, J.**—I respectfully dissent. The Supreme Court of the United States has authoritatively stated that a foreign corporation's knowledge or foreseeability that its product will be used in another state is not sufficient to subject it to in personam jurisdiction. The corporation must purposefully avail itself of the privilege of conducting activities in the forum state. (*World-Wide Volkswagen Corp.* v. *Woodson* (1980) 444 U.S. 286, 295-297 [62 L.Ed.2d 490, 500-501, 100 S.Ct. 559].) The court stated, "If foreseeability were the criterion, a local California tire retailer could be forced to defend in Pennsylvania when a blowout occurs there." (*Id.,* at p. 296 [62 L.Ed.2d at p. 500].) Speaking to stream-of-commerce situations, the court explained that a corporation may be subjected to jurisdiction where the sale "arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, . . ." (*Id.,* at p. 297 [62 L.Ed.2d at p. 501].) In contrast, "the mere 'unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.'" (*Id.,* at p. 298 [62 L.Ed.2d at p. 502], quoting *Hanson* v. *Denckla* (1958) 357 U.S. 235 [2 L.Ed.2d 1283, 78 S.Ct. 1228].)

The burden was on Cheng Shin Rubber Industrial Co., Ltd. (Cheng Shin) to establish by competent evidence that in personam jurisdiction existed over Asahi Metal Industry Co., Ltd. (Asahi). (*Messerschmidt Development Co.* v. *Crutcher Resources Corp.* (1978) 84 Cal.App.3d 819, 825 [149 Cal.Rptr. 35].) To my mind Cheng Shin has not carried that burden. Nowhere is it claimed that Asahi had *any* direct contact with California and no evidence supports the assertion that Asahi intended to serve the California market indirectly. Cheng Shin neglected to indicate what percentage of its total sales are made in the United States, but even assuming that Cheng Shin made 100 percent of its sales in this country, Asahi would have derived no more than .25 percent of its revenues from Cheng Shin's California sales. Cheng Shin presented evidence that other tire manufacturers sell tires in California that incorporate Asahi valves but there is no indication of the number of such tires or what percentage of Asahi's total revenues are rep-

resented by such tires. Even assuming that Asahi derives 10 times as much of its revenues from other manufacturers' California sales as from Cheng Shin's, a matter of sheer speculation, Asahi would only receive 2.5 percent of its total revenue from California. This miniscule percentage belies any suggestion that Asahi intended to serve the California market indirectly. The assertion that Asahi "knew" that its valves were destined for California is predicated on a slender reed—*Cheng Shin's* manager's second-hand understanding. It seems beyond controversy to me that Asahi at best foresaw that some valves would be sold in California but it in no way purposefully availed itself of conducting business in California nor exerted any effort to serve the California market. Under the teaching of *World-Wide Volkswagen Corp.*, then, I would find that California cannot assert in personam jurisdiction over Asahi.

Nonetheless, the majority opinion argues that Asahi's indirect business in California is substantial. (*Ante,* p. 48.) The opinion next equates Asahi's knowledge that some of its valves would eventually be sold in California with proof that Asahi purposefully availed itself of the benefit of California's laws.[1] The majority concludes, based on those predicates, that Asahi reasonably should have anticipated being haled into court in California and that California may properly exercise jurisdiction over Asahi. (*Ante,* p. 48.)[2] I do not find that analysis persuasive.

Finally, even assuming that minimal contacts exist, I dissent from the conclusion that California may fairly and reasonably exercise jurisdiction. The majority notes that California has an interest in enforcing its safety standards, that most of the evidence is in California, and that the presence of other cross-defendants raises the danger of inconsistent judgments should the Cheng Shin/Asahi dispute be litigated elsewhere. Whatever interest California may have had in asserting jurisdiction over Asahi to enforce its safety standards evaporated when the California plaintiffs settled with all defendants. Even before settlement the California plaintiffs showed no interest in Asahi. Plaintiffs never sought to serve Asahi as an additional defendant although it must have been apparent by August 1982 at the latest

[1] The majority's approach, confusing foreseeability with intent and hence finding efforts to serve the forum's market, is similar to that posited by Justice Marshall's dissent in *World-Wide Volkswagen Corp.* and, obviously, rejected by the majority of the Supreme Court. (See *World-Wide Volkswagen, Corp., supra,* 444 U.S. at p. 313 [62 L.Ed.2d at p. 511] (dis. opn. of Marshall, J.).)

[2] Gauging the propriety of asserting jurisdiction by whether the party should reasonably expect to be haled into court in the forum is noted in *World-Wide Volkswagen Corp.* but not exclusively relied upon and results in a logical vicious circle. If a forum routinely asserts jurisdiction, foreign parties will expect to be haled into court there. The more parties expect to be haled into court, the greater the propriety of the forum's assertions.

that Asahi was potentially liable. Further, Cheng Shin waited over a year from the date it was served with the complaint before cross-complaining against Asahi.

True, the evidence is in California but the principal evidence bearing on Asahi's liability must be the motorcycle tire, an item easily transported to the eventual forum. Although other cross-defendants do remain, Asahi and Cheng Shin presumably entered into a sales contract which may contain terms that are unenforceable in California but which are proper under the laws of Japan or Taiwan. Certainly they did not expect their relationship, *inter se,* to be governed by California. Any disadvantage to the other cross-defendants is balanced by the disadvantage of having California law applied, essentially randomly, to the dispute between Asahi and Cheng Shin.

The net result of the majority's decision is that a Taiwanese corporation can litigate in California against a Japanese corporation that has absolutely no connection with California in a case in which the California plaintiffs have declared themselves made whole. Surely our overburdened courts should be concerned with disputes that more directly involve California.

I would issue the writ.

Mosk, J., concurred.