622 F.Supp. 1011 (1985)
Donald L. TAYLOR, Plaintiff,
v.
UNIDEN CORPORATION OF AMERICA, et al., Defendants.
No. 85-345C(1).
United States District Court, E.D. Missouri, E.D.
November 29, 1985.
*1012 Steven G. Schumaier, Clayton, Mo., for plaintiff.
James E. McDaniel, St. Louis, Mo., Susan K. Chandler, Los Angeles, Cal., William J. Travis, Paul D. Kingsolver, St. Louis, Mo., for defendants.

MEMORANDUM
NANGLE, Chief Judge.
This cause is now before the Court on the separate motions of defendants Uniden Electronics of Hong Kong, Ltd. and Uniden Corporation of Japan to dismiss for lack of personal jurisdiction and the motion of Uniden Corporation of Japan to quash service of process.

I. PERSONAL JURISDICTION
Plaintiff, a citizen of Missouri, alleges injuries arising out of his use of a cordless telephone manufactured by defendants, corporations under the laws of Hong Kong and Japan respectively. Defendants argue that plaintiff's pleadings are insufficient to satisfy the Missouri long-arm statute because plaintiff fails to allege contacts with Missouri. Defendants also argue that the exercise of jurisdiction over them violates due process because plaintiff fails to demonstrate that defendants purposefully availed themselves of the privileges of conducting activities within Missouri. In responding to these arguments, plaintiff relies upon the "stream of commerce" theory of jurisdiction.
In passing on a motion to dismiss for lack of jurisdiction over a non-resident, a federal diversity court is required to engage in a two-step inquiry: first, whether defendant committed one of the acts enumerated in the long-arm statute; and second, whether the exercise of personal jurisdiction over defendant violates the due process clause of the fourteenth amendment. The Land-O-Nod Company v. Bassett Furniture Industries, Inc., 708 F.2d 1338 (8th Cir.1983); Scullin Steel Co. v. National Railway Utilization Corp., 676 F.2d 309, 312 (8th Cir.1982). Plaintiff, the party that is seeking to invoke federal jurisdiction, has the burden of establishing that jurisdiction exists, and this burden may not be shifted to the party challenging the jurisdiction. Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 653 (8th Cir. 1982). While the facts are viewed in the light most favorable to the plaintiffs, "there must nonetheless be some evidence upon which a prima facie showing of jurisdiction may be found to exist...." Aaron Ferer & Sons Co. v. Diversified Metals Corp., 564 F.2d 1211, 1215 (8th Cir.1977) (citations omitted). See also Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1285 (9th Cir.1977) (plaintiff need only make a prima facie showing of jurisdictional facts through submission of affidavits plus discovery materials); Greycas, Inc. v. Anderson, 584 F.Supp. 894, 895-96 (E.D.Mo.1984); 4 Wright & Miller, Federal Practice and Procedure § 1068 at 250 (1969).
Missouri's Long-Arm statute provides in part:
1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as *1013 to any cause of action arising from the doing of any such acts:
(1) The transaction of any business within this state;
(2) The making of any contract within this state;
(3) The commission of a tortious act within this state;
(4) The ownership, use, or possession of any real estate situated in this state;
(5) The contracting to insure any person, property or risk located within this state at the time of contracting.
(6) Engaging in an act of sexual intercourse within this state with the mother of a child on or near the probable period of conception of that child.
2. ....
3. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.
Mo.Rev.Stat. § 506.500 (Supp.1984).
The due process clause of the fourteenth amendment places limits upon the power of a court to exercise personal jurisdiction over a non-resident defendant. The due process clause requires that a defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); Land-O-Nod, 708 F.2d at 1340. Accord World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); Kulko v. California Superior Court, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). "In judging minimum contacts, a court properly focuses on `the relationship among the defendant, the forum, and the litigation.'" Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984) (citations omitted). See also Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). The defendant's contacts with the forum state must be purposeful and such that defendant "should reasonably anticipate being haled into court there." World Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. at 567. See also Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).
In this circuit, the due process standard has devolved into a consideration of five factors:
(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.
Aaron Ferer & Sons Co. v. Diversified Metals Corp., 564 F.2d 1211, 1215 (8th Cir. 1977). See Land-O-Nod, 708 F.2d at 1340. The first three factors are of primary importance and the last two are of secondary importance. Id.
The Court begins by examining the pleadings to determine whether they satisfy the requirements of the long-arm statute. Plaintiff alleges injuries resulting from use of defendants' telephone. Plaintiff also alleges that defendants manufacture, design, distribute, sell, and wholesale Uniden cordless telephones and that these telephones were placed into the stream of commerce of the United States reaching every state including Missouri. Defendants' argument rests upon a narrow, technical construction of the pleadings. Essentially, defendants argue that plaintiff's pleadings are insufficient because they fail to allege that defendants ever sold telephones in Missouri. The pleadings, defendants argue, demonstrate only an intention to market telephones in the United States.
It is the trial court's duty to construe all pleadings so as to do substantial justice. Fed.R.Civ.P. 8(f). Granted, plaintiff does not allege sales in Missouri explicitly. Nevertheless, plaintiff alleges sufficient facts to provide defendants adequate notice. Though the pleadings do not reveal the volume of sales within Missouri, it is *1014 reasonable to assume that substantial sales occurred here. See Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961). Indeed, defendants have submitted affidavits stating that it sold two and one-half million cordless telephones in the United States. Thus, plaintiff's complaint alleges a tort within Missouri arising out of the sale of defendants' cordless telephone and, therefore, satisfies the Missouri long-arm statute.
In their second argument, defendants assert that plaintiff's allegations are insufficient because they fail to show any contact between defendants and Missouri. Defendants argue that an allegation that defendants placed their product in the stream of commerce does not lead to the conclusion that defendants purposefully availed themselves of the privileges afforded by Missouri law.
Both sides rely upon Worldwide Volkswagen, in which a fortuitous accident in Oklahoma involving a car sold in New York did not provide a sufficient contact between Oklahoma and the New York dealer. As the Supreme Court specified, a corporation must engage in activities within the forum seeking to assert jurisdiction such that the corporation could foresee being haled into court there. 444 U.S. at 297, 100 S.Ct. at 567. When the sale of a product arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in certain states, it is not unreasonable to subject it to suit in one of those states if its allegedly defective merchandise has been the source of injury to its owner or to others. 444 U.S. at 297, 100 S.Ct. at 567. On the basis of this dicta, numerous courts have distinguished between retailers who restrict their sales to a local market and manufacturers and upstream distributors who seek a broader market for their product. See Hedrick v. Daiko Shoji Company, Ltd., Osako, 715 F.2d 1355 (9th Cir.1983); Nelson By Carson v. Park Industries Inc., 717 F.2d 1120 (7th Cir.1983); Noel v. S.S. Kresge Co., 669 F.2d 1150 (6th Cir.1982); Oswalt v. Scripto, Inc., 616 F.2d 191 (5th Cir.1980); Hutson v. Fehr Brothers, Inc., 584 F.2d 833 (8th Cir.1978) (Stephenson, J. dissenting); Rockwell Intern. Corp. v. Costruzioni Aeronautiche, 553 F.Supp. 328 (E.D.Pa. 1982); Asahi Metal Industry Co. v. Superior Court of Solano County, 39 Cal.3d 35, 702 P.2d 543, 216 Cal.Rptr. 385, 702 P.2d 543 (1985).
In Hedrick v. Daiko Shoji Company, Ltd., Osako, 715 F.2d 1355 (9th Cir.1983), the plaintiff, a longshoreman, sued for personal injuries resulting from a defective wire-rope splice manufactured by Daiko, a foreign defendant. As the Ninth Circuit held, the defendant performed a forum-related act when it produced a splice that it knew was destined for ocean-going vessels serving United States ports. 715 F.2d at 1358. The court distinguished between Daiko, which distributed its products worldwide, and the dealer in Worldwide Volkswagen, which restricted its market to three northeastern states.
Similarly, in Oswalt v. Scripto, Inc., 616 F.2d 191 (5th Cir.1980), the Fifth Circuit upheld the district court's exercise of jurisdiction over a foreign manufacturer. The manufacturer sold millions of cigarette lighters to a domestic distributor for sales across the United States. Eventually, one of these lighters injured the plaintiff in Texas. Since the manufacturer did not attempt to restrict the number of states in which the lighters were sold, the court found that the manufacturer could reasonably anticipate defending itself in a state in which its lighters were in fact sold. 616 F.2d at 200.
In Hutson v. Fehr Brothers, Inc., 584 F.2d 833 (8th Cir.1978), the plaintiffs alleged they were injured while working in a lumber yard when a chain broke. The chain had been manufactured abroad and reached Arkansas after a series of transactions between foreign and domestic distributors. The defendant had neither manufactured the defective chain nor sold or marketed it in the United States. The defendant's only connection with the chain was that at one time it repacked and resold *1015 it to another company which resold the chain to its own American subsidiary. By a four-to-three majority, the court held that the defendant did not purposefully avail itself of the privilege of conducting business in the forum state. The facts of the instant case distinguish it from Hutson. Here, the telephone passed directly from the manufacturer to the manufacturer's wholesale distributers in the United States. Thus, the manufacturer and upstream distributors were aware of, if not in complete control of, the scope of retail distribution. In addition, the law of personal jurisdiction has changed somewhat. The stream of commerce theory, discredited by the majority in Hutson, won favor in Worldwide Volkswagen and subsequent cases. In his dissent in Hutson, Judge Stephenson anticipated the reasoning of Worldwide Volkswagen:
It is not essential to personal jurisdiction that [the defendant] knew that its product was being sold in Arkansas. It is enough that [the defendant] could reasonably anticipate that its product sold through an exclusive distributorship in North America might ultimately be used in any state of the United States and it would be held to answer in any such state for the damage the product caused. The manufacturer cannot deny the substantial interest of the injured person's state in providing a convenient forum for its citizens.
A corporation is answerable where it introduces its product into the stream of interstate commerce if it has reason to know or expect that its product would be brought into the state where the injury occurred. Where the activities complained of create a substantial risk of injury in the forum state, direct contact with that state is not essential.
584 F.2d at 839 (citations omitted).
The above cases establish that a manufacturer may be subject to a particular forum's jurisdiction, without direct contact with that forum, by intentionally distributing its products to a market which includes that forum. This Court must now apply that principle to the instant facts to determine whether defendants have contacts with Missouri sufficient to satisfy due process. Though defendants maintain no office in Missouri and engage in no advertising here, defendants marketed their cordless telephones throughout the United States, including Missouri, selling over two and one-half million telephones. In addition, plaintiff's injuries resulted from the use of one of these allegedly defective telephones. These facts establish contacts between defendants and Missouri. Considering these facts in light of the factors sent out by the Eighth Circuit in Aaron Ferer, this Court finds that defendants' contacts with this forum are substantial in both quality and quantity and that plaintiff's causes of action arose out of these contacts. Defendants sought to gain by sales within Missouri and enjoyed the privileges of Missouri law in so doing. Therefore, the exercise of jurisdiction over these defendants comports with traditional notions of fair play and substantial justice implicit in the constitutional requirement of due process. Accordingly, defendants' motions to dismiss for lack of personal jurisdiction are denied.

II. SERVICE OF PROCESS
Defendant Uniden Corporation of Japan moves to quash service of process on the ground that plaintiff's complaint was not served in compliance with the Hague Convention on the Service of Documents, Feb. 10, 1969, 20 U.S.T. 361, T.I.A.S. No. 6638. This Court finds that plaintiff complied with the requirements of the Convention in effecting service.
The Hague Convention is a treaty between several signatory countries, including the United States and Japan, concerning the method of serving judicial documents in foreign countries. Article 2 of the Hague Convention provides for the designation of a Central Authority of each foreign state through which service of process may be routed. Article 5 permits the Central Authority to require the document to be served translated into the official *1016 language of the nation. In Japan, documents must be translated into Japanese. Under Article 4, if the party seeking to serve documents does not comply with the provisions of the Convention, the Central Authority may object. The Convention also provides that a request form accompany the document to be served. When completed by the party seeking service, the form provides details such as the names of the parties, the type of service requested, and a list and summary of documents to be served.
Plaintiff translated its summons and complaint into Japanese. The issue presented is whether the request form must also be translated.
Article 5 provides that only the document to be served need be translated. The "document" refers only to the judicial document, not the request form. Though the final paragraph of Article 5 provides that the portion of the request form summarizing the documents be served with the documents, this provision does not require translation of the request form. Consistent with the preamble of the Convention, the request form is designed to simplify and expedite service by providing the Central Authority with information in a standardized fashion. In this case, if the Japanese authority found the form or documents inadequate, it could have objected under Article 4. It has not done so. Defendant has received the translated summons and complaint and can demonstrate no prejudice resulting from the procedures followed by the plaintiff. Therefore, this Court denies defendant's motion to quash service.